DIEMER, WHITMAN & CARDOSI, LLP
KATHRYN DIEMER #133977
75 East Santa Clara Street, Suite 290
San Jose, California 95113

ATTORNEYS FOR LOMPA FARMS, INC. a/k/a LOMPA RANCH

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| LOMPA FARMS, INC. a/k/a LOMPA RANCH, <br><br> Plaintiff, <br><br> v. <br><br> ANCHOR WAREHOUSE SERVICES LLC d/b/a ANCHOR WAREHOUSE PACKING SERVICES, M. PARK, INC., OLD WEST EXPORT, INC., S. SURABIAN & SONS d/b/a S. SURABIAN & SONS GROWERS & SHIPPERS and GARTH A. RAMSEIER, MAX CARDEY, DIANN ANDERSON, DAVE MUSE, LANE A. ANDERSON, HYUN J. KIM, ALBERT O. SURABIAN, SR., and MARY FLORA, each individually, <br><br> Defendants. | CIVIL ACTION <br><br> Case No. CV 11-00062 PSG |

## FIRST AMENDED COMPLAINT

For its complaint, Plaintiff respectfully states as follows:

### THE PARTIES

1. Lompa Farms, Inc. a/k/a Lompa Ranch (the "Plaintiff") is a Delaware Corporation with offices in Hollister, California and operates as, *inter alia*, a Grower under 7 C.F.R. § 46.2(p).

2. Plaintiff sells wholesale quantities of perishable agricultural commodities ("Produce") in interstate and foreign commerce.

3. Defendants are:

a) Anchor Warehouse Services LLC d/b/a Anchor Warehouse Packing Services ("Anchor"), a California Corporation with its principal place of business located in Exeter, California;

b) M. Park, Inc. ("M Park"), a California Corporation with its principal place of business

located in Orange Cove, California;

c) Old West Export, Inc. ("Old West"), a California Corporation with its principal place of business located in Visalia, California;

d) S. Surabian & Sons, Inc. d/b/a S. Surabian & Sons Growers & Shippers ("Surabian"), a Delaware Corporation with its principal place of business located in Dinuba, California;

e) Garth A. Ramseier ("Ramseier"), individually, an owner, member, or person in a position to control Anchor, at all times relevant to this action;

f) Max Cardey ("Cardey"), individually, on information and belief, an agent of both Anchor and M.Park;

g) Diann E. Anderson ("D.Anderson"), individually, an owner, shareholder, partner or person in a position to control Old West, at all times relevant to this action;

h) Dave Muse ("Muse"), individually, an owner, shareholder, partner or person in a position to control Old West, at all times relevant to this action;

i) Lane A. Anderson ("L.Anderson"), individually, an owner, shareholder, partner or person in a position to control Old West, at all times relevant to this action;

j) Hyun J. Kim ("Kim"), individually, an owner, proprietor, partner or person in a position to control M.Park, at all times relevant to this action;

k) Albert O. Surabian, Sr. ("A.Surabian"), individually, an owner, proprietor, shareholder, partner or person in a position to control Surabian, at all times relevant to this action, and:

l) Mary Flora ("Flora"), individually, an employee and agent of Surabian.

Anchor, M.Park, Old West, Surabian, Ramseier, Cardey, D.Anderson, Muse, L.Anderson, Kim, A.Surabian and Flora hereinafter collectively the "Defendants."

4. Anchor, Old West, M. Park and Surabian are each engaged in the business of selling or distributing Produce in commerce for or on behalf of growers or others and whose operations include harvesting, grading, packing and furnishing containers, supplies and other services and, therefore, each qualify as a "growers' agent" as defined by the Perishable Agricultural Commodities

1 Act 1930, 7 U.S.C. §§ 499a-499t, as amended (the "PACA").

2     5.    Anchor, Old West, M. Park and Surabian are each engaged in the business of purchasing or selling Produce in wholesale or jobbing quantities and, therefore, each qualify as a "dealer" of Produce as defined by the PACA.

    6.    Anchor, Old West, M. Park and Surabian are each engaged in the business of negotiating sales and purchases of various perishable agricultural commodities in interstate or foreign commerce for or on behalf of a vendor or purchaser, respectively, and, therefore, each qualify as a "broker" of Produce as defined by the PACA.

    7.    Old West, M. Park and Surabian each operate their business under a valid PACA License which the United States Department of Agriculture issued to Old West, M. Park and Surabian, each individually.

## JURISDICTION AND VENUE

    8.    The District Court has jurisdiction over this civil action arising under 7 U.S.C. § 499b (2)(4), as well as 7 U.S.C. § 499e(c)(5), pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367(a) and in rem jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1655.

    9.    Venue in this District is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL ALLEGATIONS

    10.    In early February of 2009, Cardey contacted Plaintiff in order to observe the Plaintiff's lemon grove and to discuss the possibility of Anchor providing harvesting, picking, packing and Produce marketing services to Plaintiff.

    11.    In an effort to induce Plaintiff to contract with Anchor, Cardey discussed three separate pricing models with Plaintiff that ranged from $46.30 to $172.30 net proceeds to Plaintiff per bin of lemons.

    12.    Cardey represented to Plaintiff that, based on his personal inspection of the Plaintiff's lemon grove, Plaintiff could expect returns toward the high end of the models.

13. Relying upon Anchor's representations, Plaintiff cancelled its current contract with Duda Farms in order to allow Anchor to make good on its promises.

14. On March 3, 2009, Cardey presented a Custom Packing Contract for the 2008-2009 Season (the "Agreement") to Plaintiff for execution.

15. Plaintiff executed the Agreement on March 3, 2009.

16. Anchor executed the Agreement on March 10, 2009.

17. The Agreement contained the custom pack charges and other terms the parties agreed upon. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

18. Pursuant to the terms of the Agreement, Plaintiff sold to Anchor, and Anchor purchased from Plaintiff, at least 794 bins (or 19,850 40lb. cartons) of fresh lemons ("Produce") having an estimated value of no less than $250,000.00.

19. Anchor accepted each load of Produce which corresponds to the Field Tickets attached hereto as Exhibit B.

20. Anchor accepted each load of Produce stated in Exhibit B in Hollister, California.

21. Without disclosure to or authority from Plaintiff, Anchor transferred or otherwise sold Plaintiff's Produce to Old West, M. Park and Surabian.

22. On information and belief, Old West, M. Park and Surabian each sold a portion of the Plaintiff's Produce as an undisclosed agent of Anchor.

23. On information and belief, at all times relevant hereto Old West, M. Park and Surabian each acted as undisclosed agents of Anchor.

24. On June 25, 2009, Plaintiff issued to Anchor, and Anchor received, an invoice for all but 46 bins of Produce listed in Exhibit B. A true and correct copy of said invoice and a related chart of damages is attached hereto as Exhibit C.

25. On July 9, 2009, Plaintiff issued to Anchor, and Anchor received, a letter demanding payment of its June 25, 2009 invoice and preserving its PACA trust rights against the Defendants. A true and correct copy of said letter is attached hereto as Exhibit D.

26. On July 14, 2009, Anchor issued a letter to Plaintiff, *inter alia*, acknowledging receipt of Plaintiff's July 9, 2009 letter and admitting that Anchor had not yet remitted a final accounting to

Plaintiff. A true and correct copy of said letter is attached hereto as Exhibit E.

26. The Plaintiff is an unpaid grower, supplier or seller of Produce having sold Produce to Anchor for which it remains unpaid.

28. Anchor failed to deliver good funds to the Plaintiff in the amount set forth under "Trust Amount" identified in Exhibit C, despite repeated demands from the Plaintiff.

## COUNT I.

### ENFORCEMENT OF THE PACA TRUST
7 U.S.C. § 499e(c)(3)

29. Plaintiff re-alleges paragraphs 1 through 28 as though fully set forth herein.

30. The Defendants are in possession, custody and control of all assets derived from the Anchor's sale of Produce (the "PACA Trust Assets") for the benefit of the Plaintiff and other similarly-situated PACA trust beneficiaries.

31. The Defendants failed to deliver to the Plaintiff sufficient funds from the PACA Trust Assets from the shipments of Produce as listed in Exhibit C.

32. The Defendants failed to preserve sufficient amounts of the PACA Trust Assets to fully satisfy all qualified PACA trust claims, such as the Plaintiff's unpaid claims asserted in this action.

33. As a direct result of the Defendants' failure to properly protect the PACA Trust Assets from dissipation, the Plaintiff suffered damages for unpaid invoices which are covered under the PACA trust in the current aggregate amount of $111,637.69, plus further interest at the statutory rate of 0.8333% per month.

34. On information and belief, additional unknown and unpaid trust beneficiaries exist. As a result, the Plaintiff further seeks the entry of an Order directing the Defendants to immediately turn over to the registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as the Plaintiff herein, thereby creating a fund for the benefit of said trust beneficiaries.

## COUNT II.

### FOR VIOLATION OF THE PERISHABLE AGRICULTURAL COMMODITIES ACT: FAILURE TO ACCOUNT PROMPTLY
### 7 U.S.C. § 499b(4) & 7 C.F.R. § 46.2(z)

35. Plaintiff re-alleges paragraphs 1 through 34 as though fully set forth herein.

36. Anchor received the shipments of Produce referenced in paragraph 19 above.

37. On information and belief, Anchor, by and through M.Park, Old West and Surabian (collectively the "Undisclosed Agents") received the shipments of produce referenced in paragraph 19 above.

38. Anchor received the shipments of Produce referenced in paragraph 19 as a grower's agent for Plaintiff.

39. Anchor, as a growers' agent for Plaintiff, owed Plaintiff certain fiduciary duties and obligations under the PACA and the Regulations governing the same.

40. The Undisclosed Agents owed Plaintiff the same fiduciary duties and obligations under the PACA and the Regulations as Anchor.

41. Anchor, acting through Ramseier and Cardey (the "Principals"), failed or refused to truly and correctly account to or otherwise account promptly to the Plaintiff for its receipt, handling and sale of Plaintiff's Produce, all of which is identified in Exhibit B.

42. The Defendants, failed or refused to truly and correctly account to the Plaintiff for their receipt of the Produce identified in Exhibit B despite repeated demands from the Plaintiff.

43. As a direct result of the Defendants' failure to account promptly, truly and correctly to Plaintiff, the Plaintiff incurred damages with an estimated value of no less than $250,000.00, less any disclosed or otherwise agreed upon charges contained in the Agreement.

## COUNT III.

### FOR VIOLATION OF THE PERISHABLE AGRICULTURAL COMMODITIES ACT: FAILURE TO PAY PROMPTLY
### 7 U.S.C. § 499b(4)

44. Plaintiff re-alleges paragraphs 1 through 43 as though fully set forth herein.

45. Anchor received the shipments of Produce referenced in paragraph 19 above.

46. On information and belief, Anchor, by and through its Undisclosed Agents, received

the shipments of produce referenced in paragraph 19 above.

47. Anchor failed or refused to make full payment promptly to the Plaintiff for its receipt of Plaintiff's Produce, all of which is identified in Exhibit C.

48. Anchor, acting through its Principals, failed to pay the invoice identified in Exhibit C within the applicable payment terms.

49. As a direct result of Anchor and the Principals' failure to pay the invoice within terms, the Plaintiff incurred damages in the aggregate current amount of $111,637.69, plus further interest at the statutory rate of 0.8333% per month.

## COUNT IV.

### FOR VIOLATION OF THE PERISHABLE AGRICULTURAL COMMODITIES ACT: FAILURE TO MAKE FULL PAYMENT PROMPTLY
7 U.S.C. § 499b(4) & 7 C.F.R. § 46.2(aa)(9)

50. Plaintiff re-alleges paragraphs 1 through 47 as though fully set forth herein.

51. Anchor received the shipments of Produce referenced in paragraph 19 above.

52. On information and belief, Anchor, by and through its Undisclosed Agents, received the shipments of produce referenced in paragraph 19 above.

53. Anchor, acting through its Principals and Undisclosed Agents, failed or refused to make full payment promptly to the Plaintiff for its receipt of Plaintiff's Produce, all of which is identified in Exhibit B.

54. As a direct result of Anchor, the Principals and the Undisclosed Agents' failure to make full payment promptly, the Plaintiff incurred damages in an estimated amount of no less than $250,000.00, plus interest at the statutory rate of 0.8333% per month from the payment due date, less any disclosed or otherwise agreed upon charges contained in the Agreement.

## COUNT V.

### BREACH OF CONTRACT

### ANCHOR

55. Plaintiff re-alleges paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiff and Anchor entered into an Agreement under which Plaintiff agreed to sell the Produce and Anchor agreed to purchase the Produce referenced in paragraph 19 above.

- 7 -

57. The Plaintiff delivered conforming goods to Anchor and has otherwise satisfied all conditions of the contract.

58. Anchor failed, *inter alia*, to "report" to Plaintiff pursuant to ¶ 2 of the AWPS Responsibilities section of the Agreement.

59. Anchor failed, *inter alia*, to provide Plaintiff with "daily run sheets" pursuant to ¶ 5 of the AWPS Responsibilities section of the Agreement.

60. Anchor failed, *inter alia*, to provide Plaintiff with "base physical floor counts every morning" pursuant to ¶ 6 of the AWPS Responsibilities section of the Agreement.

61. Anchor failed, *inter alia*, to charge Plaintiff in compliance with the custom pack charges set forth on page one (1) of the Agreement.

62. In violation of the Agreement, Anchor charged Plaintiff for undisclosed services, materials, labor, etc. allegedly rendered to Plaintiff in connection with Anchor's performance under the Agreement.

63. In violation of the Agreement, Anchor failed to disclose to Plaintiff its use of Undisclosed Agents in connection with Anchor's performance or discharge of its obligations under the Agreement.

64. In violation of the Agreement, Anchor failed to designate or otherwise identify its use of any "AWPS Alliance Packers" for the receipt and packing of Plaintiff's fruit.

65. In violation of the Agreement, Anchor failed to provide Plaintiff with the proper grower returns Plaintiff bargained for under said Agreement.

66. As a direct result of Anchor's aforementioned breaches of the Agreement, the Plaintiff incurred damages in an estimated amount of no less than $250,000.00, plus interest at the statutory rate of 0.8333% per month from the payment due date, less any disclosed or otherwise agreed upon charges contained in the Agreement.

## COUNT VI.

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

67. Plaintiff re-alleges paragraphs 1 through 66 as though fully set forth herein.

68. Plaintiff and Anchor entered into an Agreement under which Plaintiff agreed to sell the

- 8 -

Produce and Anchor agreed to purchase the Produce referenced in paragraph 19 above.

69. The Plaintiff delivered conforming goods to Anchor and has otherwise satisfied all conditions of the contract.

70. Anchor failed, *inter alia*, to "report" to Plaintiff pursuant to ¶ 2 of the AWPS Responsibilities section of the Agreement.

71. Anchor failed, *inter alia*, to provide Plaintiff with "daily run sheets" pursuant to ¶ 5 of the AWPS Responsibilities section of the Agreement.

72. Anchor failed, *inter alia*, to provide Plaintiff with "base physical floor counts every morning" pursuant to ¶ 6 of the AWPS Responsibilities section of the Agreement.

73. Anchor failed, *inter alia*, to charge Plaintiff in compliance with the custom pack charges set forth on page one (1) of the Agreement.

74. In violation of the Agreement, Anchor charged Plaintiff for undisclosed services, materials, labor, etc. allegedly rendered to Plaintiff in connection with Anchor's performance under the Agreement.

75. In violation of the Agreement, Anchor failed to disclose to Plaintiff its use of Undisclosed Agents in connection with Anchor's performance or discharge of its obligations under the Agreement.

76. In violation of the Agreement, Anchor failed to designate or otherwise identify its use of any "AWPS Alliance Packers" for the receipt and packing of Plaintiff's fruit.

77. In violation of the Agreement, Anchor failed to provide Plaintiff with the proper grower returns Plaintiff bargained for under said Agreement.

78. Anchor's aforementioned breaches of contract violated the implied covenant of good faith and fair dealing in that Anchor's failures, by design, stripped the Plaintiff of the ability to track its Produce, monitor the sales efforts and otherwise obtain the benefits it bargained for in the Agreement.

79. On information and belief, the Undisclosed Principals aided and abetted Anchor's breaches of the Implied Covenant of Good Faith and Fair Dealing.

80. On information and belief, Anchor utilized the Undisclosed Principals to knowingly

breach the Implied Covenant of Good Faith and Fair Dealing.

81. On information and belief, Anchor utilized the Undisclosed Principals to knowingly withhold critical accounting information, to inflate grower charges, to impose undisclosed packing charges upon the Plaintiff, falsify information pertaining to the Plaintiff's Produce and to otherwise dilute the Plaintiff's bargained for and expected return on its Produce.

82. As a direct result of Anchor and its Undisclosed Agents' aforementioned breaches of the Implied Covenant of Good Faith and Fair Dealing, the Plaintiff incurred damages in an estimated amount of no less than $250,000.00, plus interest at the statutory rate of 0.8333% per month from the payment due date, less any disclosed or otherwise agreed upon charges contained in the Agreement.

## COUNT VII.

### CONVERSION OF FUNDS
Violation of 7 C.F.R. § 46.33

83. Plaintiff re-alleges paragraphs 1 through 82 as though fully set forth herein.

84. At all times relevant hereto, the Undisclosed Agents each held a valid PACA License, which the USDA issued to each of the Undisclosed Agents.

85. At all time relevant hereto, Anchor qualified as an entity or was otherwise engaged in the type of business that the USDA requires to obtain and maintain a PACA License.

86. In violation of the PACA, Anchor failed to obtain and maintain a PACA License.

87. Anchor and the Undisclosed Agents collected or otherwise received funds, on behalf of the Plaintiff, from their sale of the Plaintiff's Produce.

88. The funds Anchor and the Undisclosed Agents received form their individual sale of the Plaintiff's Produce were impressed with a statutory trust under 499e of the PACA for all valid PACA trust beneficiaries, such as the Plaintiff herein.

89. The Plaintiff is the holder of a valid PACA trust claim against Anchor and, as such, is a proper trust beneficiary of the PACA trust assets in both Anchor and the Undisclosed Agents' custody and care.

90. The Plaintiff is the owner of the Produce identified in Exhibits B & C and, as such, has a financial interest therein.

91. Anchor and the Undisclosed Agents used or otherwise disposed of the funds identified in Exhibit C in such a manner as to endanger or otherwise impair Anchor's ability to faithfully and promptly pay Plaintiff for the Produce identified in Exhibit C.

92. As a direct result of Anchor and the Undisclosed Agents use or disposition of the funds they collected on behalf of the Plaintiff and in connection with the Produce transactions identified in Exhibit C, the Plaintiff incurred damages in the current aggregate amount of $111,637.69, plus further interest at the statutory rate of 0.8333% per month.

## COUNT VIII.

### UNJUST ENRICHMENT

93. Plaintiff re-alleges paragraphs 1 through 92 as though fully set forth herein.

94. On information and belief, the Defendants, received the shipments of produce referenced in paragraph 19 above.

95. Defendants have converted, or are now in the process of converting, for their own use and benefit, the goods Plaintiff delivered to Anchor and/or the proceeds therefrom with an estimated value of no less than $250,000.00, less any disclosed or otherwise agreed upon charges contained in the Agreement, which is subject to proof.

96. Defendants have willfully accepted and retained the benefits of their receipt of the Plaintiff's Produce and/or the proceeds from the sale thereof under circumstances that make it inequitable for the Defendants to retain such benefit without making payment to Plaintiff of its value, causing the Defendants to be unjustly enriched to the Plaintiff's detriment.

97. If the Defendants are allowed to continue to convert and/or use such goods or the proceeds therefrom, they will be unjustly enriched to the detriment of the Plaintiff.

98. As a direct and proximate result of the Defendants wrongful conversion and retention of both the goods and funds due to Plaintiff, the Plaintiff incurred damages in an estimated amount of no less than $250,000.00, plus interest at the statutory rate of 0.8333% per month from the payment due date, less any disclosed or otherwise agreed upon charges contained in the Agreement.

# COUNT IX.

## BREACH OF FIDUCIARY DUTY TO PACA TRUST BENEFICIARIES

99. Plaintiff re-alleges paragraphs 1 through 98 as though fully set forth herein.

100. At all times relevant to this action, the Principals were the persons/entities in charge of all aspects of Anchor's business undertakings.

101. At all times relevant to this action, the Principals were the persons/entities engaged in the business of buying or selling Produce in interstate commerce in wholesale or jobbing quantities.

102. The Principals controlled and managed Anchor's operations and had control over its financial dealings, including those involving the PACA Trust Assets.

103. The Principals had authority to direct the payment of Anchor's operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

104. As officer or directors of Anchor, the Principals were statutory trustees with a duty to safeguard the PACA Trust Assets and were required to maintain the trust assets in such a manner as to ensure there are, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as that owed to Plaintiff.

105. Because the Principals controlled Anchor, and Plaintiff's invoice has not been paid from PACA trust assets as it became due, the Principals breached their fiduciary duties under the PACA trust.

106. Because the Principals controlled Anchor, and Anchor utilized Undisclosed Agents in a deliberate attempt to bypass its statutory duties to Plaintiff as a grower's agent, the Principals and the Undisclosed Agents breached their fiduciary duties under the PACA trust.

107. The Undisclosed Agents owe the same fiduciary duties to the Plaintiff under the PACA as Anchor.

108. At all times relevant to this action, D.Anderson, Muse and L.Anderson were the persons/entities in charge of all aspects of Old West's business undertakings.

109. At all times relevant to this action, D.Anderson, Muse and L.Anderson were the persons/entities engaged in the business of buying or selling Produce in interstate commerce in wholesale or jobbing quantities.

110. D.Anderson, Muse and L.Anderson controlled and managed Old West's operations and had control over its financial dealings, including those involving the PACA Trust Assets.

111. D.Anderson, Muse and L.Anderson each had authority to direct the payment of Old West's operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

112. As officer or directors of Old West, D.Anderson, Muse and L.Anderson were statutory trustees with a duty to safeguard the PACA Trust Assets and were required to maintain the trust assets in such a manner as to ensure there are, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as that owed to Plaintiff.

113. At all times relevant to this action, Kim and Cardey were the persons/entities in charge of all aspects of M.Park's business undertakings.

114. At all times relevant to this action, Kim and Cardey were the persons/entities engaged in the business of buying or selling Produce in interstate commerce in wholesale or jobbing quantities.

115. Kim and Cardey controlled and managed M.Park's operations and had control over its financial dealings, including those involving the PACA Trust Assets.

116. Kim and Cardey each had authority to direct the payment of M.Park's operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

117. As officer or directors of M.Park, Kim and Cardey were statutory trustees with a duty to safeguard the PACA Trust Assets and were required to maintain the trust assets in such a manner as to ensure there are, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as that owed to Plaintiff.

118. At all times relevant to this action, A.Surabian and Flora were the persons/entities in charge of all aspects of Surabian's business undertakings.

119. At all times relevant to this action, A.Surabian and Flora were the persons/entities engaged in the business of buying or selling Produce in interstate commerce in wholesale or jobbing quantities.

120. A.Surabian and Flora controlled and managed Surabian's operations and had control over its financial dealings, including those involving the PACA Trust Assets.

121. A.Surabian and Flora each had authority to direct the payment of Surabian's operating funds and otherwise had the power to direct the application or disposition of the PACA Trust Assets.

122. As officer or directors of Surabian, A.Surabian and Flora were statutory trustees with a duty to safeguard the PACA Trust Assets and were required to maintain the trust assets in such a manner as to ensure there are, at all times, sufficient trust assets to satisfy all outstanding PACA trust obligations such as that owed to Plaintiff.

123. The Principals, A.Surabian, Flora, Kim, Cardey, D.Anderson, Muse and L.Anderson continue to hold any and all PACA Trust Assets having come into their individual possession as trustees for Plaintiff's beneficial interest in the PACA trust.

124. The Principals, A.Surabian, Flora, Kim, Cardey, D.Anderson, Muse and L.Anderson are personally liable to Plaintiff, which liability is joint and several with Anchor, the Undisclosed Agents and any third parties having received any PACA trust assets with actual or constructive notice of the breach of the PACA Trust, for the dissipation of the PACA trust to the extent of $111,637.69, plus further interest at the statutory rate of 0.8333% per month.

**FOR THESE REASONS,** Plaintiff respectfully seeks the entry of an Order providing as follows:

A) As to Count I: (i) entering an Order creating a common fund and/or otherwise compelling the preservation of the Company's PACA trust assets for the benefit of the Plaintiff and other similarly-situated PACA trust beneficiaries that properly join in the instant action, (ii) entering an Order directing the Defendants to immediately turn over to the registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as the Plaintiff, (iii) entering a Final Judgment in favor of the Plaintiff and against the Defendants, jointly and severally, in the current amount of $111,637.69, plus further interest at the statutory rate of 0.8333% per month.

B) As to Count II, enter a Final Judgment in favor of Plaintiff and against the Defendants, jointly and severally, in the current amount of $250,000.00, plus further interest at the statutory rate of 0.8333% per month, less any disclosed or otherwise agreed upon charges contained in the Agreement and less any actual recovery on other Counts herein.

C) As to Count III, enter a Final Judgment in favor of Plaintiff and against Anchor and its Principals, jointly and severally, in the current amount of $111,637.69, plus further interest at the statutory rate of 0.8333% per month, less any actual recovery on other Counts herein.

D) As to Count IV, enter a Final Judgment in favor of Plaintiff and against Anchor, the Principals and the Undisclosed Agents, jointly and severally, in the current amount of $250,000.00, plus further interest at the statutory rate of 0.8333% per month, less any disclosed or otherwise agreed upon charges contained in the Agreement and less any actual recovery on other Counts herein.

E) As to Count V, enter a Final Judgment in favor of Plaintiff and against Anchor, in the current amount of $250,000.00, plus further interest at the statutory rate of 0.8333% per month, less any disclosed or otherwise agreed upon charges contained in the Agreement and less any actual recovery on other Counts herein.

F) As to Count VI, enter a Final Judgment in favor of Plaintiff and against Anchor and the Undisclosed Agents, jointly and severally, in the current amount of $250,000.00, plus further interest at the statutory rate of 0.8333% per month, less any disclosed or otherwise agreed upon charges contained in the Agreement and less any actual recovery on other Counts herein.

G) As to Count VII, enter a Final Judgment in favor of Plaintiff and against Anchor and the Undisclosed Agents, jointly and severally, in the current amount of $111,637.69, plus further interest at the statutory rate of 0.8333% per month, less any actual recovery on other Counts herein.

H) As to Count VIII, enter a Final Judgment in favor of Plaintiff and against the Defendants, jointly and severally, in the current amount of $250,000.00, plus further interest at the statutory rate of 0.8333% per month, less any disclosed or otherwise agreed upon charges contained in the Agreement and less any actual recovery on other Counts herein.

I) As to Count IX, (i) entering an Order creating a common fund and/or otherwise

compelling the preservation of Anchor's PACA trust assets for the benefit of the Plaintiff and other similarly-situated PACA trust beneficiaries that properly join in the instant action, (ii) entering an Order directing the Principals to immediately turn over to the registry of the Court all assets impressed with the PACA trust for the benefit of all unpaid trust beneficiaries such as the Plaintiff, (iii) entering a Final Judgment in favor of Plaintiff and against the Principals, on a joint and several basis with Anchor and the Undisclosed Agents, for breach of their fiduciary duties to PACA Trust, in the current amount of $111,637.69, plus further interest at the statutory rate of 0.8333% per month, less any actual recovery on other Counts herein.

J) Providing such other and further relief as the Court deems appropriate upon consideration of this matter.

Date: July 1, 2011

Respectfully submitted,

LOMPA FARMS, INC. a/k/a LOMPA RANCH

By: /s/ Kathryn Diemer, Esq.
One of Its Attorneys

Kathryn Diemer, Esq.
DIEMER, WHITMAN & CARDOSI, LLP
75 East Santa Clara Street, Suite 290
San Jose, California 95113
Tel: 408/971-6270